592 P.2d 1262

**In the Matter of the Adoption of Ronald Keith HADTRATH, Mark Robert Hadtrath and Dawn Lynn Everett, minors.**

**William Lee LONGNECKER, Jr., Appellant,**

v.

**Elizabeth Ann LONGNECKER, Appellee.**

**No. 13564.**

Supreme Court of Arizona, In Banc.

March 28, 1979.

Goldenkoff & Lee by Abbott H. Goldenkoff and Joseph W. Lee, Phoenix, for appellant.

Leibsohn, Eaton, Gooding, Romley & Monbleau by Joe M. Romley, Phoenix, for appellee.

HOLOHAN, Justice.

Appellant filed a petition in the superior court seeking to set aside an order of adoption that allowed him to adopt the natural children of his former wife. Appellee filed a motion to dismiss the petition. The Superior Court of Maricopa County heard arguments on the petition, and thereafter the trial court granted the motion to dismiss the petition. Appellant filed a timely appeal. We assumed jurisdiction pursuant to 17A A.R.S. Sup. Ct. Rules, rule 47(e)(5).

Appellant William Longnecker and appellee Elizabeth Longnecker were married on September 3, 1970. At the time of the marriage Elizabeth was the natural mother of three children, Ronald, Mark and Dawn. Elizabeth was not married when Ronald and Mark were born, and no one has come forth to acknowledge being the father of either of these children. At the time of Dawn's birth, Elizabeth was married to Donald P. Everett, but a question has arisen whether Everett is the natural father of Dawn.

Shortly after William and Elizabeth were married, she began pressuring him to adopt her children. He resisted this idea for a considerable period of time, despite her repeated efforts to convince him to change his mind. Finally in 1973, when she threatened

to leave him, he consented to adopt the children.

When the couple filed their petition for adoption, they included, pursuant to A.R.S. § 8–106(A), consent forms from two people alleged by Elizabeth to be the natural fathers of two of her three children. One consent, filed by Mark Wasserman, states that he is *not* the natural parent of Elizabeth's son, Mark, but he consents to adoption. The second consent, filed by Donald P. Everett, states that he *is* the natural father of Elizabeth's daughter, Dawn.

Everett had been married to Elizabeth for about six months at the time Dawn was born. The couple were subsequently divorced, and in a verified complaint in that action Everett had stated that "no children have been born as issue of this marriage." A property settlement agreement containing the same language was made a part of their divorce decree. Nevertheless, Everett stated in the adoption consent that he was Dawn's natural father.

Immediately after the adoption was final, William's marriage to Elizabeth began to deteriorate. About six weeks after the adoption, Elizabeth left William, saying she was *never coming back*. The couple were divorced on June 18, 1974. At the time of their divorce, Elizabeth agreed that she wanted no child support from William. About a year later, she sought to modify the decree to include child support for the three children. The court ordered William to pay $50 per month per child. Three months later when appellant had not paid the required child support, Elizabeth sought an order to show cause why William should not be found in contempt for failing to pay the child support. The court found him in contempt and ordered him jailed.

On December 31, 1975, William petitioned the superior court to set aside the adoption order, alleging that he had been induced by fraud to adopt the children, and that the court itself had been defrauded by Everett's perjurious consent. After the dismissal of his petition, the appellant brought this appeal, raising a variety of issues. For pur-

poses of this appeal, the issues can be condensed into four basic questions:

1) Is the order of adoption void for lack of notice to the natural fathers?

2) Is the order void because the statute relied on was unconstitutional?

3) Should the order be set aside on account of appellee's fraudulent representations to appellant?

4) Should the order be set aside because of fraud upon the court?

I.

A judgment may be attacked as void upon its face if any of the following three elements are lacking:

(1) jurisdiction of subject matter;

(2) jurisdiction of the person involved, and

(3) jurisdiction to render the particular judgment or order entered.

*Hughes v. Industrial Commission,* 69 Ariz. 193, 211 P.2d 463 (1949); *Dockery v. Central Arizona Light & Power Co.,* 45 Ariz. 434, 45 P.2d 656 (1935). Such an attack may be made by motion within a reasonable time after final judgment. 16 A.R.S. Rules of Civil Procedure, rule 60(c)(4).

But appellant, having voluntarily invoked the jurisdiction of the superior court to allow him to adopt appellee's children, should be estopped to assert that the court did not have jurisdiction to render the decree he sought. *Blair v. Blair,* 48 Ariz. 501, 62 P.2d 1321 (1936).

"The question of whether the court had jurisdiction either of the subject matter of the action, or of the parties, is not important in such cases. Parties are barred from such conduct, not because the judgment obtained is conclusive as an adjudication, but for the reason that such a practice cannot be tolerated." *Bledsoe v. Seaman,* 77 Kan. 679, 685, 95 P. 576, 579 (1908).

We need not rely on the doctrine of estoppel in this case however, since there was no jurisdictional defect. It is true that the consent of the natural parents required

by A.R.S. § 8 106 is jurisdictional, and that a judgment lacking this prerequisite would be void. *Lee v. Superior Court, in and for the County of Pima,* 25 Ariz.App. 55, 540 P.2d 1274 (1975). *See also Hughes v. Industrial Commission, supra.* However, in this case the requirement has been met. At the time of the original adoption, A.R.S. § 8–106(A)(1)(d) had not been repealed. This section eliminated the necessity of consents from the natural fathers of Ronald and Mark, because they had never been married to Elizabeth. As for Dawn, either Everett is the natural father, in which case his consent was valid, or the natural father had not been identified either by prior adjudication or acknowledgment under oath, in which case no consent was required.

## II.

Appellant argues that A.R.S. § 8–106(A)(1)(d) violates the constitutional right of a natural father to due process and equal protection, and that the "retroactive" application of the statute infringes upon rights which vest with the natural father at the time of the child's birth. Citing *Stanley v. Illinois,* 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972), appellant contends that the notice provision referred to in part I, *supra,* denies an unwed father the opportunity to assert his parental rights and have his interests protected in the adoption proceedings.

At the time he sought the adoption order, appellant relied upon A.R.S. § 8–106(A)(1)(d). This was necessary because, at least as to the oldest child Ronald, appellant was unable to obtain consent from anyone either alleged or claiming to be the child's natural father. Having invoked this statute, appellant should not now be allowed to question its constitutionality. *Burri v. Campbell,* 102 Ariz. 541, 434 P.2d 627 (1967); *Anthony A. Bianco, Inc. v Hess,* 86 Ariz. 14, 339 P.2d 1038 (1959). While this general rule does not require unconditional adherence, *Ruth v. Industrial Commission,* 107 Ariz. 572, 490 P.2d 828 (1971), its application is most appropriate in this case.

Appellant does not invoke his own constitutional rights but those of the natural fathers in order to bolster his attack on the statute. Absent some extraordinary need for resolution of a constitutional question, only the person injured has standing to raise constitutional objections. *McKinley v. Reilly,* 96 Ariz. 176, 393 P.2d 268 (1964), *appeal dismissed,* 381 U.S. 276, 85 S.Ct. 1457, 14 L.Ed.2d 431; *see also Barlow v. Barlow,* 170 Colo. 465, 463 P.2d 305 (1969); *In re Smith's Estate,* 86 Cal.App.2d 456, 195 P.2d 842 (1948).

Appellant argues that he has been injured by the adoption order, which he claims was fraudulently secured. This misconstrues the doctrine of standing. The injury which gives a party standing to assert a constitutional claim must be a deprivation of the very right upon which the claim is founded. Appellant's "injury" stems not from the adoption order, but from the subsequent child support order. In no way is he being deprived of a parental right. Despite his protestation to the contrary, we consider the adoption order to be a legal benefit to him, one for which he himself petitioned, and one which gave him all the legal rights and benefits of a parent. Because A.R.S. § 8–106 has been amended to exclude the provision he questions, there is no pressing public need for a resolution of its constitutionality. Thus no reason exists for excepting appellant from this general rule of standing.

While we decline to consider appellant's constitutional arguments, we note in passing that the equal protection issue raised by appellant has apparently been resolved in the recent case of *Quilloin v. Walcott,* 434 U.S. 246, 98 S.Ct. 549, 54 L.Ed.2d 511 (1978).

## III.

Appellant contends that the court should have declared the adoption order void on grounds of fraud. The distinction between void and voidable judgments is applicable. An allegation of fraud does not attack the court's jurisdiction to decide a case. Consequently a judgment obtained

by fraud is not void but merely voidable. *School District No. 1 of Navajo County v. Snowflake Union High School District,* 100 Ariz. 389, 414 P.2d 985 (1966). For this reason timeliness becomes an important concern.

■ Appellant came before the trial court by way of a petition for an order to show cause. The petition was docketed under the same number as the original adoption order. It is, in essence, a motion for relief from judgment under 16 A.R.S. Rules of Civil Procedure, rule 60(c). Rule 60(c)(3) specifically allows such a motion to be brought on grounds of fraud. However, the rule limits such motions to "not more than six months after the judgment or order was entered. . . ." Appellant's petition came nearly two years after the adoption order. It does not fall within any of the categories in rule 60(c) that are not covered by the six-month time limit. The trial court correctly dismissed the motion as untimely, insofar as it alleged fraud.

### IV.

■ Finally, appellant argues that the consent executed by appellee's former husband, Everett, constitutes a fraud on the court. While rule 60(c) precludes appellant's assertion of fraud among the parties, the rule "does not limit the power of a court . . . to set aside a judgment for fraud upon the court." We must therefore examine the merits of this argument.

In *Dockery v. Central Arizona Light and Power Co., supra,* this court made it clear that equitable relief would not be available where an alleged fraud involved instruments actually presented to the court:

> "On the other hand, the doctrine is equally well-settled that the court will not set aside a judgment because it was founded on a fraudulent instrument, or perjured evidence, *or for any matter which was actually presented and considered in the judgment assailed.*" 45 Ariz. at 451–52, 45 P.2d at 663.

Of course, in a nonadversary proceeding such as this case originally was, a court may not be in a position to scrutinize every document presented to it for truthfulness.

In *Hartford v. Hartford,* 53 Ohio App.2d 79, 371 N.E.2d 591 (1977), a woman in her petition for divorce alleged that one child was born of the marriage. The trial court granted the divorce in a default hearing, awarded her custody of the child and ordered her ex-husband to pay child support. He was not the natural father of the child, and later sought to set aside the child support order on the ground that her failure to inform the court that he was not the natural father constituted a fraud upon the court. The Ohio Court of Appeals disagreed.

> "Although appellee may have been less than candid with the trial court during the divorce proceedings, we cannot say that her conduct rose to the level of a fraud upon the court, as we have defined that term. Perjury or misrepresentations to the court do not constitute a fraud on the court unless the adverse party was prevented from presenting a defense. Such was not the case here." 53 Ohio App.2d at 85, 371 N.E.2d at 595.

■ In the case before us, appellant was not prevented from presenting any matter to the court. On the contrary, he joined in presenting the allegedly fraudulent consent to the court.

A requisite element of fraud is reliance. Had the parties not submitted the allegedly false consent, the court would have granted the adoption order anyhow, relying upon A.R.S. § 8–106(A)(1)(d) as it did in the case of Ronald, whose natural father was never identified. Thus the court's order cannot be said to have been granted in reliance upon the alleged fraud.

Finding no error, we affirm the decision of the superior court.

CAMERON, C. J., STRUCKMEYER, V. C. J., and HAYS and GORDON, JJ., concur.